# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1651V
UNPUBLISHED

| | |
|---|---|
| APRIL PARSONS,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: April 22, 2024<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Meghan Murphy, U.S. Department of Justice, Washington, DC,* for Respondent.

## RULING ON ENTITLEMENT[1]

On November 23, 2020, April Parsons filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 25, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Relevant Procedural History

On August 19, 2022, Respondent filed a Rule 4(c) Report and a Motion to Dismiss. ECF No. 34. Respondent argues that Petitioner cannot meet the severity requirement of the Vaccine Act, and also cannot establish onset of her injury began within forty-eight hours of vaccination, a Table element for a SIRVA claim. *Id.* at 7-8. Petitioner filed a motion for a ruling on the record on January 20, 2023. Motion for a Ruling on the Record ("Mot."), ECF No. 41. Respondent opposed the motion on February 3, 2023, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 42, at 8-12. The matter is ripe for resolution.

## II.    Petitioner's Medical Records

Petitioner, a sixty-two year-old traveling nurse, received a flu vaccine in her left shoulder on September 25, 2018, at a her place of employment in Santa Rosa, California. Ex. 1 at 1. Petitioner contacted her employer by email on four occasions in October of 2018 stating that she was still experiencing shoulder pain after her flu vaccination. Ex. 15 at 1-3.

Petitioner first sought treatment for shoulder pain on November 2, 2018, at Concentra Honolulu. Ex. 7 at 13, 60. The intake form states "SIRVA L Shoulder." Ex. 7 at 13, 60. She reported that she had a flu shot and "felt a pop," had pain "for about a month after injection," and rated it as three out of ten. *Id.* at 13. An examination showed mild reduced range of motion, full strength, and negative impingement tests. *Id.* at 14. She was diagnosed with adhesive bursitis, received a steroid injection, and was referred to physical therapy. *Id.* at 12.

On November 6, 2018, Petitioner again sought care for left shoulder pain. Ex. 7 at 9. She reported decreased range of motion, and was determined to be "50% of the way toward meeting the physical requirements of her job." *Id.* at 11. That same day, Petitioner presented for an initial physical therapy evaluation. Ex. 7 at 20. She complained of left shoulder pain due to "a flu shot in her shoulder" and stated the date of injury was September 25, 2018. *Id.* She described her pain as intermittent, "mild and improving" with a gradual onset. *Id.* at 21.

Petitioner returned to Concentra Honolulu on November 13, 2018, for a follow-up. Ex. 7 at 6. She reported "light pain", rated as two out of ten, with full strength, no tenderness, and negative impingement tests. *Id.* At that time, she was determined to have achieved "75% of anticipated healing". *Id.*

2

Petitioner sought care for an unrelated injury (an ankle fracture) on November 18, 2018. Ex. 2 at 7, 49-50. In December of 2018, Petitioner relocated to Florida and sought treatment for her ankle fracture. Ex. 9 at 7; Ex. 8 at 45.[3] Petitioner submitted a Worker's Compensation on December 31, 2018, reporting a "shoulder injury related to vaccine administration resulting in frozen shoulder, flu shot into [left] shoulder joint." Ex. 3 at 10. The date of injury was noted as September 25, 2018. *Id.*

On January 2, 2019, Petitioner presented to urgent care in Florida for an evaluation of her left shoulder. Ex. 3 at 14. She reported that she was originally seen in September out of state, that she received a steroid injection and one physical therapy session. *Id.* An examination showed mild reduced range of motion, normal strength but some tenderness. *Id.* at 15. She later that same month returned to urgent care, now in Texas, for treatment of left shoulder pain. Ex. 4 at 12. She reported moderate pain that was aggravated with movement, and was diagnosed with chronic left shoulder pain. *Id.* at 14. Onset was reported as "9/25/2018…. [A]fter immunization for flu…."

An MRI performed on February 15, 2019, showed partial thickness supraspinatus tendon tear, mild to moderate degenerative arthritis, mild subacromial bursitis, and marrow edema. Ex. 4 at 9-10. X-rays also reviewed mild to moderate degenerative arthritis changes. *Id.*

Petitioner next sought care over eight months later - on November 4, 2019, in Florida. Ex. 5 at 5. She reported left shoulder pain after a flu shot in September of 2018. *Id.* The record also notes that Petitioner is "a traveling nurse and is moving around constantly." *Id.* An examination showed tenderness, moderately reduced range of motion, and negative impingement test. *Id.* at 6. Petitioner was diagnosed with bursitis and received another cortisone injection. *Id.* at 6-7.

On November 18, 2019, Petitioner was seen again for left shoulder pain. Ex. 5 at 2. Petitioner reported shew was doing better, had decreased pain, and improved range of motion but was "still not back to normal." *Id.* She showed positive impingement signs and rotator cuff tendinitis, but declined further intervention at that time. *Id.* at 2-3.

### III.     Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

---

[3] Petitioner's permanent residence is in Tallahassee, Florida. Ex. 10.

3

duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  See § 11(c)(1)(A)(B)(D)(E).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A.  Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on September 25, 2018, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through March 25, 2019 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner first reported shoulder pain in October 2018, and her initial treatment occurred over approximately five months, followed by a nine month gap. However, when she returned for additional treatment she linked her existing shoulder pain to the September 2018 vaccination. Ex. 5 at 5. Further, she explained that

5

she was a traveling nurse who moved around "constantly", which may have contributed to her gap in treatment. *Id.*

The overall record constitutes a sufficient showing of severity to meet the preponderance evidentiary standard. It is likely that Petitioner's symptoms persisted into the spring of 2019, despite the cessation of treatment and subsequent gap. However, the light history of treatment, combined with lengthy treatment hiatus, also suggests a mild injury - which will likely impact damages in this case.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on October 8, 2018, when she stated in an email that she "got a flu shot (September 25th) at the hospital…and two weeks later am still experiencing shoulder joint pain." Ex. 15 at 1. Additionally, Petitioner continued to link her shoulder pain temporally to the flu vaccine. *See* Ex. 7 at 13 (record from November 2, 2018, stating that Petitioner had a flu shot and had pain "for about a month after injection"); Ex. 3 at 10 (record from December 31, 2018, noting in a Worker's Compensation claim that the date of injury was September 25, 2018); Ex. 4 at 14 (starting in a January 25, 2019 record that the onset of Petitioner's injury was September 25, 2018 "after immunization for flu").

Respondent argues that Petitioner's statements are vague and never identified a specific timeframe for onset of her shoulder symptoms. Opp. at 12. Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour

that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the September 25, 2018, flu vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

## C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on September 25, 2018, in the United States. Ex. 1 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 3; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
